## IN THE UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA

In Re:

OFER MIZRAHI,                                          Case No. 12-27559-RAM
                                                       Chapter 11

                    Debtor.

_____/

OFER MIZRAHI,                                          Adv. No. 12-01789-RAM

            Plaintiff,

vs.

LSREF2 BARON, LLC, a Florida limited
liability company, WELLS FARGO BANK, N.A.,
PENTIUM CONSTRUCTION, INC., n/k/a
ARKIN CONSTRUCTION CO., INC., a Florida
corporation,  UNIVERSAL PROPERTY & CASUALTY
INSURANCE COMPANY, a Florida corporation,
and UNIVERSAL RISK ADVISORS, INC., an agent
of Universal Property, BERMUDEZ CLAIM
SERVICES, INC., A Florida Corporation, MINTZ
TRUPPMAN, P.A., a Florida corporation, BANK OF
AMERICA, N.A., and SCHWABEN STONE, INC.

            Defendants.

_____/

## AMENDED ADVERSARY COMPLAINT

OFER MIZRAHI, Debtor and Plaintiff in this matter, by and through his undersigned

counsel, sues LSREF2 BARON, LLC, as assignee of REGIONS BANK, WELLS FARGO BANK,

N.A. (collateral) assignee of LSREF2 BARON, LLC, PENTIUM CONSTRUCTION, INC., n/k/a

ARKIN CONSTRUCTION CO., INC., UNIVERSAL PROPERTY & CASUALTY INSURANCE

COMPANY, and UNIVERSAL RISK ADVISORS, INC., MINTZ TRUPPMAN, P.A., BANK OF

AMERICA, NATIONAL ASSOCIATION, as successor by merger of Fleet National Bank, and

SCHWABEN STONE, INC., A Florida corporation, and states:

1.      This is an adversary to:

   a.      Determine the extent priority and validity of:

      i.      liens against real property of the Debtor;

      ii.      liens and/or claims against insurance proceeds on account of losses to real and personal property of the Debtor.

   b.      To compel UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY and/or Universal Risk Advisors, Inc. ("Universal") to issue a new check or checks ( the issued check or checks are stale on their face);

      i.      To determine any fees of the adjustors and counsel;

      ii.      To determine the claims and nature of claims, if any, of Pentium Construction, Inc., to the Property or proceeds.

2.      This is a core proceeding.

3.      The Debtor owns real property at 3110 Sheridan Avenue, Miami Beach, FL 33140 (the "Property"), it is his Homestead.

4.      Universal is an insurer of dwellings in Florida who provided insurance to the Debtor for the Property.

5.      LSREF2 is an assignee of the (Regions Bank) First Mortgage (a convertible construction loan) on the Property ("LSREF2").

6.      Wells Fargo is an assignee for collateral security purposes of LSREF2 Baron, LLC (Wells Fargo and "LSREF2" are sometimes referred to herein as "LSREF2/WELLS").

7.      Bank of America, National Association is the successor by merger to Fleet National Bank,

who holds an Open-End Mortgage on the Property ("Bank of America").

8.   Pentium Construction, Inc. ("Pentium") , n/k/a ARKIN CONSTRUCTION CO., INC., is a Florida corporation doing business in Miami-Dade County, Florida.

9.   Bermudez Claim Services, Inc., ("Bermudez") is a Florida corporation doing insurance adjusting business in Miami-Dade County, Florida.

10.   Mintz & Truppman, P.A., is a law firm retained by the Debtor pre-petition to seek additional recoveries from Universal.

11.   Schwaben Stone, Inc. ("Schwaben") is a Florida corporation who performed services and/or delivered materials to the Property.

12.   Schwaben filed a claim of lien on the Property and a *lis pendens*.

13.   On or about March 7, 2010, the Debtor, while insured with Universal and with outstanding mortgages (convertible construction loan) to Regions Bank and Bank of America, suffered an insured loss at the Property.

14.   The insured loss consisted of various elements including:

a.   damage to the building on the Property;

b.   loss of personal property;

c.   collateral losses and expenses.

15.   Universal initially issued two checks for the damage to the dwelling in the sum of $414,637.35 made payable jointly to Regions and Mizrahi and Bermudez ("Dwelling Check").

16.   Bermudez performed adjusting services for Mizrahi under a written agreement and was entitled to a fee (10%) of the Dwelling Check.

17.     Bermudez endorsed the Dwelling Check and delivered it to Mizrahi.

18.     Mizrahi endorsed the Dwelling Check and delivered it to Regions Bank with the understanding that the funds would partially reduce the construction loan balance and that the remaining balance of the construction loan proceeds $120,000 would be finally released to complete the dwelling construction.

19.     Instead, Regions wrongfully asserted a default, refused to convert the construction loan to permanent financing (as was agreed in the loan documentation), refused to pay Bermudez, and retained the entire Dwelling Check and never provided an explanation of how the proceeds of the Dwelling Check were applied.

20.     Regions/LSREF2/Wells Fargo also has or had funds in "escrow" that were not accounted for or applied to the loan.

21.     Reducing the loan by the amounts not released and the amounts kept by Regions or its successors results in an overpayment of the loan to date.

22.     This conduct of Regions caused damages to Mizrahi, including:

        a.      increased costs;

        b.      interest and fees to Bermudez;

        c.      increased living expenses;

        d.      attorneys fees and costs.

23.     LSREF2, by assignment, stepped into the shoes of Regions Bank and is bound by the acts and omissions of Regions.

24.     Wells Fargo, by assignment, stepped into the shoes of LSREF2 and is bound by the acts and omissions of Regions and LSREF2.

25.     The Debtor is in need of a portion of the insurance proceeds to achieve a certificate of occupancy for the Property.

26.     The Debtor is in need of $41,000 from the proceeds of the Dwelling Check to pay Bermudez who was entitled to same approximately one year ago.

27.     The mortgage loan was due to be adjusted to libor +2.25 and Regions never made the adjustment as required.

28.     Regions then and LSREF2/Wells Fargo now wrongfully or unfairly assert the loan is in default status and refuse to release insurance proceeds for any purpose.

29.     The Debtor has no adequate remedy at law and is in need of and entitled to an equitable resolution.

30.     The balance of the Dwelling Check proceeds should be applied to regular monthly payments due on the construction mortgage loan (as adjusted) with the balance together with any unused escrows to reduce the principal, and a new principal and adjusted interest rate should be found and declared.

31.     Mintz & Truppman, P.A., is entitled to a charging lien on the SLC for reasonable services rendered in this regard.

32.     Schwaben has filed an inflated claim against the Property.

33.     On August 17, 2011, Universal issued a second check for the Debtor's losses beyond the damages to the dwelling ($200,000) ("Soft Loss Check").

34.     The Soft Loss Check was also made payable to Mizrahi, Bermudez, Regions, Bank/Regions Mortgage and Mizrahi's counsel, Mintz & Truppman, P.A.

35.     The various entitlements to the Soft Loss Check or its proceeds are in dispute.

36.     Bermudez is not entitled to a share of the Soft Loss Check.

37.     Regions/LSREF2/Wells Fargo are not entitled to a share of the Soft Loss Check.

38.     Mintz Truppman, P.A. is entitled to a fee (charging lien) from the Soft Loss Check.

39.     Regions/LSREF2/Wells Fargo strategically refused to release the funds as part of a litigation strategy.

40.     Regions/LSREF2/Wells Fargo, by their conduct have damaged the Debtor by increasing the costs and expenses to try to secure the Soft Loss Check or its proceeds and have caused damage due to the loss of the use of the money for almost one year (so far).

41.     During the course of these events, the Debtor, at the request of Regions, entered into a contract with Pentium.   However, Pentium either performed no services or performed *de minimis* services and has not performed under the contract.

42.     Pentium filed a *lis pendens* and has made a secured claim against the Estate.

43.     Pentium is not owed any sums.

44.     If Pentium is owed any funds at all, in such event, the claims of Pentium should be determined and declared to be general unsecured claims in this case.

45.     An additional and separate loss occurred in March of 2012 and Fidelity Insurance Co., in July, 2012, wrote a check for just under $30,000 (non-weather "Water Damage Check"). This check is also written jointly to Wells Fargo, the Debtor and Ultra Claims Consultants, LLC. Ultra is entitled to twenty percent (20%) of this check as a fee.

46.     Bank of America, as successor by merger of Fleet National Bank, holds an open-end mortgage on the property dated April 28, 2004. By virtue of the loan documents, Bank of America may claim an entitlement or interest in the Property, a portion of the Dwelling

Check and/or the Soft Loss Check and/or Water Damage.

47.     Bank of America was not named as additional insured in Debtor's insurance policy.

48.     Bank of America is unsecured by virtue of the prior liens and encumbrances.

WHEREFORE, the Debtor respectfully requests the entry of Court orders to the effect that:

a.      LSREF2/Wells Fargo:

   i.      satisfy the principal claim of Bermudez from the Dwelling Check proceeds;

   ii.     pay any and all additional claims of Bermudez due to the delay as damages;

   iii.    Apply the balance of the Dwelling Check and any unapplied or undisbursed escrow funds in payment of all regular/adjusted monthly payments to the date of the Petition in this case with the balance to be applied tax escrow or ad valorem tax obligations of the Property;

b.      Upon application of the funds/proceeds above, the extent of the lien of LSREF2/Wells Fargo be determined, the interest rate be determined and the monthly payment be determined;

c.      Bank of America be declared to be an unsecured creditor and having no interest in the Dwelling Check, Soft Loss Check and the Water Damage Check;

d.      Universal issue a replacement check for the Soft Loss Check to the Debtor;

e.      Mintz Truppman, P.A.'s claim be determined and paid;

f.      The Soft Loss Check proceeds or replacement be determined to be free of any

claim of LSREF2/Wells Fargo; and

g.    Damages, interest and attorneys fees be awarded against /LSREF2/Wells Fargo.

h.    The $30,000 Water Damage Check be released to the Debtor free of any claim of Wells Fargo to effectuate needed repairs and to pay Ultra Claims Consultants, LLC, its undisputed fee.

i.    The extent, priority and validity of the claim of Schwaben Stone on the Property be determined and declared.

j.    That the Court grant such other or further relief as may be just and equitable in the premises.

I HEREBY CERTIFY that I am admitted to Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this court as set forth in Local Rule 2090(a).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on this 30th day of August, 2012, and forwarded via CM/ECF electronic means to all parties of record, and will be served on new defendants, Bank of America and Schwaben Stone, Inc.

**LAW OFFICES OF SCOTT ALAN ORTH, P.A.**
*Attorney for Debtor/Plaintiff*
3880 Sheridan Street
Hollywood, Florida 33021
305.757.3300 / 305.757.0071 F
scott@orthlawoffice.com
By:    /s/  Scott Alan Orth, Esq.
        SCOTT ALAN ORTH, ESQ.
        Florida Bar No. 436313