## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In Re:

OFER MIZRAHI,                                     Case No. 12-27559-RAM
                                                  Chapter 11
          Debtor.
_____/

OFER MIZRAHI,                                     Adv. No. 12-01789-RAM

          Plaintiff,

vs.

LSREF2 BARON, LLC, a Florida
limited liability company,
WELLS FARGO BANK, N.A.,
PENTIUM CONSTRUCTION, INC.,
n/k/a ARKIN CONSTRUCTION CO., INC.,
a Florida corporation,  UNIVERSAL PROPERTY
& CASUALTY INSURANCE COMPANY,
a Florida corporation, and UNIVERSAL RISK ADVISORS, INC.,
an agent of Universal Property, BERMUDEZ CLAIM
SERVICES, INC., A Florida Corporation, MINTZ
TRUPPMAN, P.A., a Florida corporation, SCHWABEN
STONE, INC., BANK OF AMERICA, NATIONAL
ASSOCIATION, and ULTRA CLAIMS CONSULTANTS,
LLC., a Florida limited liability company,

          Defendants.
_____/

### THIRD AMENDED ADVERSARY COMPLAINT

OFER MIZRAHI, Debtor and Plaintiff in this matter, by and through his undersigned

counsel, sues LSREF2 BARON, LLC, as putative assignee of REGIONS BANK, WELLS FARGO

BANK, N.A., as putative assignee of LSREF2 BARON, MINTZ TRUPPMAN, P.A., BERMUDEZ

CLAIM SERVICES, INC., a Florida Corporation, BANK OF AMERICA, NATIONAL

ASSOCIATION, as successor by merger of Fleet National Bank, SCHWABEN STONE, INC., a

Florida corporation, and ULTRA CLAIMS CONSULTANTS, LLC., a Florida limited liability

company, and states:

1.    This is an adversary to:

    A.    Determine the extent, priority and validity of:

        i.    liens or claimed liens and mortgages against real property of the Debtor;

        ii.    liens and/or claims against Insurance Proceeds on account of losses of the Debtor.

    B.    Determine any fees of the adjustors and counsel;

    C.    Seek an award of damages against LSREF2/Wells;

    D.    Seek equitable reallocation of insurance funds retained by Regions and its successors.

    E.    Declare the application of all or a portion of the Insurance Proceeds; and

    F.    Determine the amount of the resulting claim or lien of LSREF2/Wells.

2.    This is a core proceeding.

3.    The Debtor in the main case and the Plaintiff herein owns real property at 3110 Sheridan Avenue, Miami Beach, FL 33140 ("The Property").

4.    The Property is the homestead of the Debtor/Plaintiff.

5.    The insurance companies insuring The Property have issued a series of checks payable to the Debtor and others for losses sustained on The Property ("Insurance Proceeds").

6.    Regions Bank lent construction funds to Mizrahi and on April 17, 2006 recorded a mortgage against The Property (Official Records Book 22434, Page 2844)("Regions Mortgage").

7.    The Regions loan documents provide for the use of the insurance proceeds to effectuate

repairs.

8.      The Regions Note and Regions Mortgage contain provisions providing for prevailing party attorneys fees. The Debtor has retained counsel to bring this adversary and is obligated to pay, subject to Court review and approval, a reasonable attorneys fee.

9.      Universal Property and Casualty, Inc., is an insurer of dwellings in Florida who provided insurance to the Debtor for The Property. (Note:  Universal was previously a party to this action but was dropped as a party when it re-issued checks now under the custody and control of the Court).

10.     Fidelity National Property and Casualty Insurance Co., Inc., is an insurer of dwellings in Florida who provided insurance to the Debtor for The Property ("Fidelity").

11.     LSREF2 claims to be an assignee of the (Regions Bank) First Mortgage (a convertible construction loan) on the Property ("LSREF2").

12.     LSREF2, if it holds a valid assignment,  stepped into the shoes of Regions Bank and is bound by the acts and omissions of Regions. Wells Fargo claims to be an absolute assignee of LSREF2 Baron, LLC. (Wells Fargo and "LSREF2" are sometimes referred to herein as "LSREF2/WELLS").

13.     Wells Fargo,  if it holds a valid assignment, and if the assignment has not been unwound or satisfied, stepped into the shoes of LSREF2 and is bound by the acts and omissions of Regions and LSREF2.

14.     Regions (then) and LSREF2/Wells Fargo (now), up until the filing of this action, wrongfully or unfairly asserted the loan is in default status and refuse to release insurance proceeds for any purpose.

15.     Bank of America, National Association, is the successor by merger to Fleet National Bank, who claims to hold an Open-End Mortgage on The Property ("Bank of America"). On June 2, 2004, Bank of America recorded a mortgage against The Property at Official Records Book 22363, Page 2695. The Debtor is unsure if this Mortgage is valid, is unsure as to its priority, if valid, and is unsure as to the balance thereof.

16.     Bank of America was not named as additional insured in Debtor's insurance policy.

17.     Bank of America is unsecured by virtue of the prior payoff of its Mortgage or, if subordinate to other liens and mortgages, is wholly unsecured.

18.     Pentium Construction, Inc. ("Pentium") , n/k/a ARKIN CONSTRUCTION CO., INC., is a Florida corporation doing business in Miami-Dade County, Florida, who at one time was engaged to rehabilitate The Property. (Note: Pentium has settled this adversary with the Debtor and is no longer a defendant).

19.     Bermudez Claim Services, Inc., ("Bermudez") is a Florida corporation doing insurance adjusting business in Miami-Dade County, Florida, who participated in adjusting a loss on The Property.

20.     Ultra Claims Consultants, LLC., ("Ultra") is a Florida limited liability company doing insurance adjusting business in Miami-Dade County, Florida., who adjusted a loss on The Property.

21.     Mintz & Truppman, P.A., is a Florida law firm retained by the Debtor pre-petition to seek additional recoveries from Universal which resulted in the issuance of a $200,000 Second Insurance Check being issued.  (Note: a settlement has been reached with Mintz Truppman as to the amount).

22.     Schwaben Stone, Inc. ("Schwaben") is a Florida corporation who performed services and/or delivered materials to The Property.

23.     Schwaben filed a claim of lien on the Property and a *lis pendens* recorded at Official Records Book 27511, Page 4453.

24.     Schwaben has filed an inflated claim against The Property recorded December 8, 2009 at Official Records Book 27107, Page 732, and, in any event, no equity attaches to this lien claim and the lien should be stripped.

25.     By virtue of the loan documents, Bank of America may claim an entitlement or interest in The Property, a portion of the First Insurance Check and/or the Second Insurance Check and/or Water Damage.

26.     Depending on the validity and priority of encumbrances, one or more mortgages and liens may be wholly unsecured and subject to strip off.

27.     The Debtor has no adequate remedy at law and is in need of and entitled to an equitable resolution.

**COUNT ONE**
**DECLARATION AS TO WATER DAMAGE CHECK**

(As to LSREF2/Wells, Bank of America, Schwaben Stone, Mintz, Bermudez and Ultra)

The Plaintiff adopts and incorporates by reference the foregoing paragraphs 1 to 27 as if specifically set forth in this Count One.

28.     An additional and separate loss occurred in March of 2012 and Fidelity Insurance Co., in July, 2012, and September 2012 issued two (2) checks for just under $50,000 (non-weather "Water Damage Check").

29.     These checks are written jointly to Wells Fargo, the Debtor and Ultra Claims Consultants,

1 6

LLC.

30.    These checks are now within the custody of the Court and subject to this Court's jurisdiction.

31.    Ultra is entitled to twenty percent (20%) of the Water Damage Check as a fee. This amount and its reasonableness are undisputed and the amount should be paid.[1]

32.    The funds are proceeds of the Homestead of the Debtor and the Debtor is entitled to have such funds turned over pursuant to Sections 542 and 522 and Florida Statute 222.01 et seq., and the Florida Constitution.

33.    Schwaben Stone, Bermudez, Bank of America, Wells Fargo and LSREF2 are either:

    A.    Adequately protected by the Property and other payments; or

    B.    They have no valid secured claim in the Water Damage Check proceeds; or

    C.    They are not legally or factually entitled to the Water Damage Check proceeds.

34.    The Water Damage Check proceeds should be released to the Debtor to make repairs to the Property.

**WHEREFORE**, the Debtor respectfully requests the entry of Court orders to the effect that:

    A.    The Water Damage Check or its proceeds be released/turned over to the Debtor free of any claim of Defendants to effectuate needed repairs and to pay Ultra Claims Consultants, LLC, its undisputed fee;

    B.    Directing turnover of the Insurance Proceeds or so much thereof as is equitable.

---

[1] By prior order of the Court, one of the water damage check proceeds was released to the Debtor and Ultra was paid its fee from that check proceeds.

**COUNT TWO**
**DAMAGES AND DECLARATION**
**AS TO FIRST INSURANCE CHECK**
(As to LSREF2/Wells and Bermudez)

The Plaintiff adopts and incorporates by reference the foregoing paragraphs 1 to 27 as if specifically set forth in this Count Two.

35.    On or about March 7, 2010, the Debtor, while insured with Universal and with outstanding mortgages to Regions Bank (convertible construction loan) and Bank of America, suffered an insured loss at the Property.

36.    Universal initially issued two checks for the damage to the dwelling in the sum of $414,637.35 made payable jointly to Regions and Mizrahi and Bermudez ("First Insurance Check").

37.    Bermudez performed adjusting services for Mizrahi under a written agreement and was entitled to a fee from the First Insurance Check. Alternatively, Bermudez is entitled to a reasonable fee.

38.    Bermudez claims an interest in the First Insurance Check, which was seized by Regions.

39.    Bermudez endorsed the First Insurance Check and delivered it to Mizrahi.

40.    Mizrahi endorsed the First Insurance Check and delivered it to Regions Bank with the understanding that the funds would be used to pay Bermudez, bring the loan current, and be used for repairs to The Property.

41.    As Mizrahi was then current under the construction loan, Regions had a duty to Mizrahi to promptly process the check, deducting any necessary funds and remitting the remaining funds to Mizrahi and Bermudez.

42.    In addition, Regions was then obligated under the construction loan to release the remaining

balance of the construction loan proceeds (approximately $120,000) to Mizrahi.

43.    Instead, Regions wrongfully asserted a default, refused to convert the construction loan to

permanent financing (as was agreed in the loan documentation), refused to pay Bermudez,

and retained the entire First Insurance Check and never provided an explanation of how the

proceeds of the First Insurance Check were applied.

44.    The Debtor is in need of a portion of the funds from the proceeds of the First Insurance

Check to pay Bermudez who was entitled to same approximately one year ago.

45.    Any additional claims by Bermudez (such as fees, cost or interest) should be borne by

LSREF2/Wells Fargo.

**WHEREFORE**, the Debtor respectfully requests the entry of Court orders that:

    A.    LSREF2/Wells Fargo:

        i.    satisfy the principal claim of Bermudez from the First Insurance

            Check proceeds;

        ii.    pay any and all additional claims of Bermudez due to the delay as

            damages or alternatively, award to Plaintiff the interest fees and costs

            awardable to Bermudez;

    B.    Declare the balance of the First Insurance Check be applied to regular

        monthly payments determined to be owed on the Regions Note and or

        Mortgage (if valid) to the date of adjudication;

    C.    Declare that no late fees, interest, costs or attorneys fees are due to Wells

        Fargo/LSREF2;

    D.    Declare the balance of the Regions debt/claim after application of these

proceeds;

E.      Direct turnover of the Insurance Proceeds or so much thereof as is equitable; and

F.      Award such other or further relief as may be just in the circumstances.

**COUNT THREE**
**DAMAGES AND DECLARATION**
**AS TO SECOND INSURANCE CHECK**
(All Defendants)

The Plaintiff adopts and incorporates by reference the foregoing paragraphs 1 to 27 as if specifically set forth in this Count Three.

46.     On August 17, 2011, Universal issued a second check for the Debtor's losses ($200,000) ("Second Insurance Check").  This Check is now within the Custody of the Court and subject to this Court's jurisdiction.

47.     The Second Insurance Check was made payable to Mizrahi, Bermudez, Regions and Mizrahi's counsel, Mintz & Truppman, P.A.

48.     The various entitlements to the Second Insurance Check or its proceeds are in dispute.

49.     Wells and LSREF2 have refused to allow the Second Insurance Check or its proceeds to be used by the Debtor or to be paid to any other party.

50.     Bermudez is not entitled to a share of the Second Insurance Check or its proceeds.

51.     LSREF2/Wells Fargo are not entitled to a share of the Second Insurance Check or its proceeds.

52.     Mintz & Truppman, P.A., is entitled to a charging lien on the Second Insurance Check for reasonable services rendered in this regard. The reasonable amount of the services or the amount agreed to by the creditor and the Debtor as approved by the Court should be awarded

and paid to this Defendant.

53.    By virtue of the loan documents, Bank of America may claim an entitlement or interest in a portion of the Dwelling Check and/or the Second Insurance Check.

54.    Bank of America was not named as additional insured in Debtor's insurance policy, and therefore has no interest in the insurance checks.

55.    LSREF2/Wells Fargo are not entitled to a share of the Second Insurance Check.

56.    Bermudez is not entitled to a share of the Second Insurance Check.

57.    Schwaben is not entitled to a share of the Second Insurance Check.

58.    Bank of America is not entitled to a share of the Second Insurance Check

59.    Mintz Truppman, P.A. is entitled to a fee (charging lien) from the Second Insurance Check.

**WHEREFORE**, the Debtor respectfully requests the entry of Court orders:

A.    That The Second Insurance Check proceeds or replacement be determined to be free of any claim of Defendants and disbursed to the Debtor;

B.    That, alternatively, the Second Insurance check be equitably applied;

C.    Determining the extent, priority and validity of the claims of Bank of America, if any, and its interest in the insurance checks;

D.    That Mintz Truppman, P.A.'s claim be determined and paid;

E.    That fees and costs be assessed against LSREF2/Wells;

F.    That interest on the Second Insurance Check be ordered to be paid by LSREF2/Wells as damages for the delay caused by LSREF2/Wells; and

G.    Such other or further relief as may be just in the circumstances.

## COUNT FOUR
## DAMAGES AGAINST WELLS FARGO/LSREF2
## AND DECLARATION/ACCOUNTING
## OF THE EXTENT OF THE LIEN OF WELLS FARGO/LSREF2

The Plaintiff adopts and incorporates by reference the foregoing paragraphs 1 to 26 and 35 to 43 as if specifically set forth in this Count Four.

60.    Regions (then) and LSREF2/Wells Fargo (now) wrongfully or unfairly assert the loan is in default status and refuse to release insurance proceeds for any purpose.

61.    Regions/LSREF2/Wells Fargo strategically refused to release the funds as part of a litigation strategy.

62.    In addition, beginning in April or May 2009, Regions failed to adjust the loan as required under the Note and overcharged for interest.

63.    Regions/LSREF2/Wells Fargo also has or had funds in "escrow" that were not accounted for or applied to the loan.

64.    At the time this bankruptcy case was filed, the Regions Note and the Regions Mortgage were held by separate persons or entities and thus, the alleged secured interest of the Defendants (LSREF2 and Wells) was destroyed.

65.    Wells does not have a secured position in The Property or the Insurance Proceeds.  Even if it has any secured interest, Wells is a collateral assignee only.

66.    LSREF2 does not have a secured position in The Property or the Insurance Proceeds.

67.    Under a construction loan arrangement where a lender holds funds for the benefit of a debtor undertaking construction of a building, the lender (Regions and its successors) have an enhanced duty to see to the proper application of the undisbursed construction funds.

68.    As a contract entered into in the State of Florida, the Regions loan documents contain an

inherent obligation of good faith and fair dealing, such that Regions should have released the construction draw and allowed the use of the insurance proceeds to repair the Property.

69. Regions/LSREF2/Wells Fargo, by their conduct have damaged the Debtor by increasing the costs and expenses to try to secure the Second Insurance Check or its proceeds and have caused damage due to the loss of the use of the money.

70. The conduct of Regions was continued after the assignment by LSREF2 and Wells.

71. The Debtor was required by this conduct to utilize certain tax refunds and other funds to complete the construction work and to pay for it.

72. It is inequitable to allow Regions/LSREF2/Wells to retain these funds without equitable re-allocation thereof to the expenses of obtaining same and the installments and tax escrow or taxes due on The Property.

73. In equity and as a consequence of the breach of the loans documents and the obligations of good faith and fair dealing inherent therein, the Dwelling Check should be used to pay Bermudez, then applied to the installments and tax escrow due.

74.  As the direct and proximate result of Regions conduct, Mizrahi has suffered damages.

75. The Loan Documents between the Debtor and Regions provide for the award of attorneys fees to the prevailing party.

76. The conduct of Regions, LSREF2 and Wells caused damages to Mizrahi, including:

    A.      increased costs;

    B.      potential interest and fees to Bermudez;

    C.      increased living expenses;

    D.      attorneys fees in this case;

E.      attorneys fees and costs fighting the state court foreclosure instituted by Regions

when the loan should have been brought current and the case dismissed; and

F.      a misstated loan balance.

***WHEREFORE***, the Debtor respectfully requests the entry of an order:

A.      Determining that LSREF2 is an unsecured creditor of this Estate and holds no

security interest in The Property or the insurance checks or their proceeds;

B.      Determining that Wells is an unsecured creditor of this Estate or is a collateral

assignee only and holds no security interest in The Property or the insurance checks

or their proceeds;

C.      Directing that LSREF2/Wells Fargo:

i.  Satisfy the principal claim of Bermudez from the Dwelling Check proceeds;

ii.  Pay any and all additional claims of Bermudez due to the delay as damages;

iii.  Apply the balance of the Dwelling Check and any unapplied or undisbursed

escrow funds in payment of all regular/adjusted monthly payments with the balance to be

applied tax escrow or ad valorem tax obligations of The Property;

D.      Determine the amount of the claim of LSREF2/Wells and adjusted interest rate;

E.      Awarding damages, interest and attorneys fees against LSREF2/Wells Fargo; and

F.      Granting such other or further relief as may be just and equitable in the premises.

## COUNT FIVE
## DECLARATION OF THE EXTENT, PRIORITY
## AND VALIDITY OF LIENS
### (All Defendants)

The Plaintiff adopts and incorporates by reference the foregoing paragraphs 1 to 78 as if

specifically set forth in this Count Five.

81.     The value of The Property is $800,000.

82.     Based upon the value of The Property liens of some claimants are wholly unsecured.

83.     Claims that are wholly unsecured are unsecured pursuant to 11 U.S.C. Section 506(a)(1).

84.     Pursuant to 11 U.S.C. Section 506(d), the lien of each wholly unsecured creditor should be declared void.

        **WHEREFORE**, the Debtor respectfully requests the entry of Court orders to declare the extent, priority and validity of all lien claims on The Property.

        I HEREBY CERTIFY that I am admitted to Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this court as set forth in Local Rule 2090(a).

### CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this 24th day of April, 2013, on all parties of record as set forth below.

                                        **LAW OFFICES OF SCOTT ALAN ORTH, P.A.**
                                        *Attorney for Debtor*
                                        3880 Sheridan Street
                                        Hollywood, Florida 33021
                                        (305) 757-3300 / (305) 757-0071 F
                                        By:     s/ Scott Alan Orth, Esq.
                                                Scott Alan Orth, Esq.
                                                Florida Bar No. 436313

**VIA CM/ECF**
Victor H. Veschio, Esq., via firm@vlgfl.com
James Schwitalla, Esq., via jwscmecf@bellsouth.net
Melissa Youngman, Esq., via may@mccallaraymer.com
Eitan G. Gontovnik, Esq., via egg@mccallaraymer.com
Jeffrey P. Bast, Esq., via jbast@bastamron.com
Morgan Edelboim, Esq., via medelboim@bastamron.com
Mariela M. Malfeld, Esq., via mmalfeld@wthf.com

**VIA U.S. MAIL**
Adrian N. Arkin, Esq.
Mintz Truppman, P.A.
1700 Sans Souci Boulevard
North Miami, Florida 33181

Ian S. Ronderos, Esq.
Walton Lantaff Schroeder Carson, LLP
9350 South Dixie Highway, Tenth Floor
Miami, Florida 33156